431 A.2d 233

COMMONWEALTH of Pennsylvania

v.

Larry MILLER, Appellant.

Supreme Court of Pennsylvania.

Submitted Oct. 13, 1980.

Decided July 2, 1981.

Ralph D. Friedman, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

KAUFFMAN, Justice.

This appeal is from an order of the Court of Common Pleas of Philadelphia denying appellant, Larry Miller, relief under the Post Conviction Hearing Act ("P.C.H.A.").[1]

On September 30, 1965, at approximately 11:30 p. m., appellant shot and killed Edward David White in a gang related incident at 53rd and Locust Streets in Philadelphia, and was arrested almost immediately thereafter. In March, 1966, upon the advise of privately retained counsel, appellant entered a plea of guilty to murder generally, pursuant to a plea bargain agreement. In return, the Commonwealth certified that the case rose no higher than murder of the second degree. Appellant was adjudged guilty of murder of the second degree and sentenced to a term of imprisonment of four and one-half to twenty years. No appeal was taken from the judgment of sentence.

Almost eleven years later, on February 10, 1977, appellant filed a *pro se* P.C.H.A. petition seeking to have his guilty plea set aside on the ground of ineffective assistance of counsel.[2] Counsel was appointed, and an amended petition

1. Act of January 25, 1966, P.L. (1965), 1580, 19 P.S. § 1180–1 *et seq.*

2. Although appellant was paroled from his 1966 sentence on April 17, 1970, he subsequently was arrested and convicted on a kidnap-

was filed. After an evidentiary hearing, the P.C.H.A. court denied the petition.[3] This appeal followed.[4]

Appellant maintains that counsel was ineffective in advising him to enter a guilty plea: (1) without attempting to suppress an allegedly involuntary confession, and (2) in spite of counsel's knowledge that at trial an alleged eyewitness would have retracted his prior statement implicating appellant. We disagree.

"[B]efore a claim of ineffectiveness can be sustained, it must be determined that, in light of all the alternatives available to counsel, the strategy *actually* employed was so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Hill*, 427 Pa. 614, 617, 235 A.2d 347, 349 (1967), once it has been determined that the particular course of action chosen by counsel had *some reasonable basis* designed to effectuate his client's interests, counsel will be deemed constitutionally effective. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Additionally, there is a presumption in the law that counsel is effective, *Commonwealth v. Witherspoon*, 481 Pa. 321, 392 A.2d 1313 (1978); *Commonwealth v. Murray*, 452 Pa. 282, 305 A.2d 33 (1973); thus, the burden of establishing ineffectiveness rests upon appellant. *Commonwealth v. Shore*, 487 Pa. 534, 410 A.2d 740 (1980); *Commonwealth v. Logan*, 468 Pa. 424, 364 A.2d 266 (1976).

## I

Here, appellant contends that counsel was ineffective in failing to move to suppress his confession on the ground that he was only sixteen years of age at the time of the arrest

ping charge which resulted in his recommitment as a convicted parole violator on July 27, 1976. At the time he filed his P.C.H.A. petition, appellant was thus serving out the remainder of his 1966 sentence.

3. Abraham Berkowitz, Esq., defense counsel, died prior to the P.C. H.A. hearing and was therefore unavailable to testify.

4. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S.A. § 722(1).

and did not have the opportunity to consult a parent or other interested adult before waiving his *Miranda* rights and making his statement.[5]  Appellant supports this contention with the argument that a waiver of *Miranda* rights by a juvenile without benefit of adult guidance is involuntary and that any resulting confession is thus *per se* inadmissible.

While it is now true that inculpatory statements made by minors in the absence of informed adult guidance are *per se* inadmissible, *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 541 (1976), this rule had not been adopted in this Commonwealth at the time of appellant's guilty plea.  *See Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977).  At that time, "youth was but one factor to be considered in determining whether the waiver of *Miranda* rights was knowing and [the] statement voluntary."  *Commonwealth v. Triplett*, 476 Pa. at 89, 381 A.2d at 880; *see Commonwealth v. Roane*, 459 Pa. 389, 329 A.2d 286 (1974) (plurality opinion); *Commonwealth v. Fogan*, 449 Pa. 552, 296 A.2d 755 (1972); *Commonwealth v. Moses*, 446 Pa. 350, 287 A.2d 131 (1971).

We have held repeatedly that counsel's stewardship must be judged in light of the available alternatives and that he cannot be expected to raise motions unsupported by existing law.  *Commonwealth v. Roach*, 479 Pa. 528, 388 A.2d 1056 (1978); *Commonwealth v. Logan, supra; Commonwealth v. Alvorado*, 442 Pa. 516, 276 A.2d 526 (1971). Moreover, in *Commonwealth v. Triplett*, 476 Pa. at 89, 381 A.2d at 881, we rejected the precise claim here presented by appellant and refused to grant post-conviction relief where defendant's guilty plea had been entered prior to our holding in *McCutchen, supra*.  In *Triplett*, we emphasized our unwillingness to "impose upon trial counsel the qualities of a seer and fault him for not foreseeing that this Court would finally adopt *per se* rules as to juvenile waivers of *Miranda* rights. . . ."  *Accord Commonwealth v. Ray*, 483 Pa. 377, 396

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

A.2d 1218 (1979); *Commonwealth v. Roach, supra.*[6] Thus, we agree with the P.C.H.A. court that defense counsel could not reasonably have been expected under then existing law to argue for the suppression of appellant's statement solely because he was denied the opportunity to consult with an interested adult prior to its making.

## II

■ Appellant's next argument, although not clearly articulated, is that his confession was involuntary *under the totality of the circumstances,* considering his youth and the fact that he was held in custody for fourteen hours without food or drink, and that his counsel was incompetent in recommending a guilty plea rather than moving for the suppression of the confession. However, in order successfully to attack a guilty plea in a P.C.H.A. proceeding on the ground that it was the product of an involuntary pre-trial confession, one must demonstrate *all* of the following: "(1) an involuntary pre-trial confession . . . ; (2) that the guilty plea was primarily motivated by [the confession]; and, (3) that [appellant] was incompetently advised by counsel to plead guilty, in the circumstances, rather than stand trial." *Commonwealth v. Marsh,* 440 Pa. 590, 593, 271 A.2d 481, 483 (1970).

■ Conviction after a guilty plea is based not on evidence in the hands of the Commonwealth, including a pre-trial confession, but rather on a defendant's admission in open court that he committed the crime. The existence of an involuntary confession does not, in itself, prove that a defendant did not have the opportunity to make a reasonable choice, and thus it cannot, in itself, establish that the plea was not intelligently and knowingly entered. *Id.* Thus, it is critical to prove not only that one's confession was involuntary, but also that it "was the primary motivation for his plea of guilty." *Commonwealth v. Garrett,* 425 Pa. 594,

**6.** *Cf. Commonwealth v. Minarik,* 493 Pa. 573, 427 A.2d 623 (1981). (Court made rules of criminal procedure, which are not of constitutional dimension, do not apply retroactively.)

598, 229 A.2d 922, 925 (1967). Here, even assuming *arguendo* that appellant's confession was involuntary, he never attempted to prove at the P.C.H.A. hearing that his guilty plea was primarily motivated by the allegedly involuntary confession. Absent such proof, we cannot conclude that the P.C.H.A. Court erred in failing to find counsel ineffective in advising appellant to plead guilty rather than stand trial.

## III

We also reject appellant's contention that counsel was ineffective in advising him to plead guilty despite an eyewitness's intended retraction of a damaging prior statement.

In a statement to police shortly after the incident, an eyewitness, Melvin Joe ("Joe"), related: that he and two other young men, Ronald Tolver ("Tolver") and Gilbert Richardson ("Richardson") accompanied appellant to a poolroom on the night in question; that while there he saw appellant with a gun; that after leaving the poolroom, the four of them walked to 53rd and Chancellor Streets with the intention of confronting a rival gang; that shortly after they arrived, he and appellant walked up to a boy who was walking alone; that a few words were exchanged between the boy and appellant; and that appellant then shot him.[7] According to appellant, sometime prior to the guilty plea proceeding, Joe informed appellant's attorney of his decision to retract his statement, but counsel nonetheless advised him to plead guilty.

At the time of the P.C.H.A. hearing, appellant's attorney was deceased and thus unavailable to testify concerning his knowledge of the intended retraction.[8] We therefore must review the record to determine whether there was any reasonable basis for counsel's recommendation that appel-

7. Joe stated, "We went over there to 'grease' a Pine Streeter, we had talked about it, if there were only 2 or 3 we'd beat them up, but if there were too many we would use the [gun], Larry Miller and I decided this."

8. Joe also was deceased at the time of the P.C.H.A. hearing.

lant plead guilty. *See Commonwealth v. Robinson*, 487 Pa. 541, 410 A.2d 744 (1980). (Where counsel is not available to explain his course of conduct, a reviewing court shall look to the record to determine whether there was any reasonable basis for his action). That review has uncovered no evidence whatsoever, outside of appellant's assertion, indicating that defense counsel was made aware prior to the guilty plea proceeding of Joe's decision to recant.[9] Moreover, appellant totally ignores the existence of the incriminating statements of Tolver and Richardson given to police not long after the murder. In his statement, Tolver related that shortly before the shooting, he had seen appellant display a gun in the poolroom and that immediately after the shooting, he heard Joe ask appellant for the gun, but appellant refused to give it to him. He also related that when police arrived, the gun was thrown under a mailbox and that appellant must have thrown it since "... he [was] the only one who had it." Likewise, in his statement, Richardson confirmed that appellant had the gun immediately after the shooting, and added that, at that time, he heard appellant say, "We got one." Richardson also acknowledged hearing some talk about the gun in the poolroom a short time before the shooting.

Even if defense counsel had been aware of Joe's decision to retract his prior statement, his recommendation to appellant to plead guilty was entirely reasonable in view of the other overwhelming evidence available to the Commonwealth and the obvious lack of credibility in Joe's retraction of his prior statement.[10] The record adequately reflects that

9. Furthermore, we note that when Joe finally did recant his prior statement at the guilty plea proceeding, the presiding judge found his testimony so contradictory and confusing that he held him in contempt of court (N.T. 3/22/66, 40). Surely, it is reasonable to assume that defense counsel, if he were aware of Joe's decision to recant, was, like the judge, cognizant of the dubious nature of that recantation. *See Commonwealth v. Gaddy*, 492 Pa. 434, 424 A.2d 1268 (1981). Under the circumstances then, it would have been reasonable for counsel to conclude that if appellant went to trial, a jury might well have disbelieved Joe's recantation.

10. Defense counsel was aware of the statements of Tolver and Richardson. The record shows that, at the time of the 1966 guilty

238

counsel's decision reasonably was made in an attempt to avoid appellant's likely conviction of first degree murder and a sentence of death or life imprisonment.

Accordingly, we hold that the P.C.H.A. petition correctly was denied.

Order affirmed.

plea proceeding, the District Attorney's Office had an "open file policy" with respect to homicides being discussed with a view toward a guilty plea, and that, under these circumstances defense counsel would have seen the entire file, including all of the witnesses' statements. Furthermore, in the District Attorney's file there was a copy of a letter written by the prosecutor to defense counsel indicating that witnesses' statements had been sent to the defense.